IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE GUZMAN, JAMIE MERCARDO, BERNARDO MERCADO, CRISANTO PICHARDO, and CELESTINO MERCADO, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 10 CV 1499 ) Judge Blanche M. Manning ) |
| LAREDO SYSTEMS, INC., LAREDO SYSTEMS, LLC, and ENRIQUE JAMIE, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

At daybreak, sometimes six times a week, plaintiffs Jose Guzman, Jamie Mercado, Bernardo Mercado, Crisanto Pichardo, and Celestino Mercado arrived at work to begin a long day of landscaping. Although their days lasted 11 or even 12 hours, they contend that their employer paid them a flat daily rate that failed to take into account for their overtime and fell short of the minimum wage. They filed suit against their employer as well as its president to recover the wages they were allegedly shorted.

Before the court is the plaintiffs' motion for partial summary judgment on the issue of liability. For the reasons that follow, the motion is granted.

**BACKGROUND**

The following facts are undisputed except where noted. Defendant Laredo Systems, Inc. (now Laredo Systems, LLC) is a landscaping business operated by defendant Enrique Jamie, Sr., in Garden Prairie, Illinois. Jamie Sr. has always served as Laredo Systems' president and been in charge of the company.[1] About ninety-percent of Laredo Systems' landscaping work was done as a subcontractor on public works projects along Chicago area expressways and tollways.

---

[1] Jamie Sr. raises no issue as to his potential individual liability on the plaintiffs' claims, and given his admission that he was president and in charge of Laredo Systems, he would appear to be an employer under the Fair Labor Standards Act. *See Driver v. AppleIllinois LLC*, Case No. 06 CV 6149, 2012 WL 4175010, at *5 (N.D. Ill. Sept. 19, 2012) ("Personal liability has been found in this district where the individual possesses significant ownership interest coupled with day-to-day control of operations, including involvement in the supervision and payment of employees."). Thus, the court will discuss the issue of personal liability no further.

Beginning in the spring of 2005 and continuing through the fall of 2009, Laredo Systems employed the plaintiffs at various times as both landscapers and as laborers on Jamie Sr.'s farm—the parties dispute how much of each type of work the plaintiffs performed. However, they agree that the plaintiffs were required to report to work at 6:30 a.m. (though the defendants contend the plaintiffs often did not show up until 7:00 a.m.) to receive their assignment for the day from Jamie Sr. After receiving their assignment, they would gather the tools or equipment they needed for that assignment, and Jamie Mercado (the only plaintiff with a valid driver's license) would drive a company truck to take the others from Laredo Systems' facility in Garden Prairie to that day's worksite. Worksites were as far as 70 or 80 miles away, and would take up to one-and-a-half hours to reach. The plaintiffs usually returned to Laredo Systems' Garden Prairie facility around 5:30 p.m.

Jamie Sr. does not remember all of the jobs Laredo Systems performed or the contracts it entered into. Laredo Systems did not have a time clock for employees, and Jamie Sr. did not keep a written record of when employees reported to work or left. He did not maintain records of the number of hours employees worked each day, or how many hours in excess of 40 hours per week employees worked. Jamie Sr. kept track only of the number of days the plaintiffs worked, and paid a daily rate of $80 to all of the plaintiffs except for J. Mercado, who earned $130 because he drove the truck. He did not withhold any payroll taxes, and Laredo did not issue W-2s to the plaintiffs.

For work performed on public works projects, Jamie Sr. was required to complete certified payroll forms and submit them on a monthly basis to the general contractor. Jamie Sr. did not complete the payroll forms regularly, and sometimes did not submit them on time. On the payroll forms he certified that his employees had worked six hour days and been paid the prevailing wage at the time, which varied from $33.15 to $34.00 an hour. However, he now admits that he actually paid them a flat daily rate of $80, or $130 for J. Mercado. Jamie Sr. admits he has no explanation for why he paid a daily rate of $80 or $130 rather than the rate he purported to pay on the certified payroll forms.

The plaintiffs filed suit against the defendants alleging three claims. First, they allege that the defendants violated the Fair Labor Standards Act by failing to pay time-and-a-half for hours worked in excess of 40 hours a week (Count I). *See* 29 U.S.C. § 201, *et seq.* Second, they (except for J. Mercado) allege that the defendants violated the Illinois Minimum Wage Law by failing to pay the minimum hourly wage (Count II). *See* 820 Ill. Comp. Stat. 105/1, *et seq.* Third, they allege that the defendants violated the Illinois Prevailing Wage Act by failing to pay the minimum hourly wage required for public works projects (Count III). *See* 820 Ill. Comp. Stat. 130/0.01 *et seq.*

In the plaintiffs' motion for partial summary judgment, they seek judgment on the issue of liability only, and leave the issue of computation of damages for later proceedings. The defendants oppose the entry of summary judgment on the basis of disputed questions of material fact regarding the number of hours the plaintiffs worked. However, the actual dispute appears to

be a legal one involving whether federal law requires an employer to pay employees for time spent in transit.

## ANALYSIS

### I.	STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti*, 970 F.2d at 365; *see also Anderson*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

### II.	FAIR LABOR STANDARDS ACT  (COUNT I)

The Fair Labor Standards Act requires employers to pay employees time-and-a-half for all hours worked in excess of 40 a week:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA then sets out a number of exceptions under which an employer is not required to pay time-and-a-half, such as for "bona fide executive, administrative, or professional" employees. 29 U.S.C. § 213.

The defendants contend that the motion for summary judgment should be denied because of disputed questions over how many hours the plaintiffs worked. Specifically they identify evidence that the plaintiffs "seldom worked more than 6 hours per day and regularly worked 5-6 days per week," and therefore never crossed the 40-hours per week threshold for overtime.

Response [98-1] at 2. In support, they cite the deposition testimony of Jamie Sr., who stated, "I honestly don't think I ever got more than six hours out of them." Deposition of Enrique Jamie Sr. (attached as Exhibit A to "Defendant's LR 56.1 (b)(3)(C) Response of Additional Facts" [99-1]) 39:3-4. The defendants contend that Jamie Sr.'s accounting of the hours worked stands in sharp contrast to the plaintiffs' evidence that they worked 11-12 hour days, and therefore disputed questions of fact preclude the entry of summary judgment.

On closer look, however, there is no factual dispute that employees were required to report for work around 6:30 a.m. and did not leave for the day until around 5:30 p.m. Instead, the dispute is a legal one over whether the defendants were required to compensate the plaintiffs for the entire period 6:30 a.m. through 5:30 p.m. The defendants contend that they were not required to compensate the plaintiffs for that entire period but, rather, only for the time they were at the jobsite working:

> A:   . . . I don't think I got six hours out of them. I don't think so. But like I said, I wasn't a slave driver, you know.
>
> Q:   Well, let's break it down. What do you count that six hours to be? Six hours with an actual shovel in their hand?
>
> A:   Yes.
>
> Q:   And all other time is not compensable? You don't have to compensate them for that?
>
> A:   No, I don't have to pay them for an hour lunch. I don't think I have to pay them, you know, because they couldn't get to the job site.

Deposition of Enrique Jamie Sr. (attached as Exhibit A to "Defendant's LR 56.1 (b)(3)(C) Response of Additional Facts" [99-1]) at 39:7-18. Thus, Jamie Sr., did not compensate employees for the time before they left for the jobsite, which could be as late as 8:00 a.m., or for the time in transit, which was roughly an hour-and-a-half in the morning, and another hour-and-a-half ride back.

Under the Portal-To-Portal Act provision of the Fair Labor Standards Act, an employer is exempt from paying an employee for time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or for "activities which are preliminary to or postliminary to said principal activity or activities" which "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(1), (2). The defendants contend that under the Portal-to-Portal Act, they were required to pay employees only for the time they actually labored at the worksite. In support, they cite *Vega v. Gasper*, 36 F.3d 417 (5th Cir.

1994), in which the court held that the 4 hours seasonal farm workers spent each day being bussed to and from the worksite were not compensable. *Id.* at 424-25.

However, in *Vega*, the court held that the travel time for seasonal farm workers was not compensable because "the workers here performed no work prior to or while riding on Gasper's buses. They did not load tools or engage in activities that prepared them or their equipment for picking chile peppers before or while riding the buses." *Id.* at 425. In contrast, according to the undisputed facts presented in this case, before traveling to the jobsite, the plaintiffs were required to gather together the tools they would need based on the assignment they received:

> Q: So when they would arrive at the work site, they would get their assignments from you?
>
> A: Before they left I would give them the assignment.
>
> Q: Okay. And they would gather what tools or equipment they needed for that assignment and then leave to go out to the job; is that right?
>
> A: Yes.

Deposition of Enrique Jamie, Sr. (attached as Exhibit A to "Defendant's LR 56.1 (b)(3)(C) Response of Additional Facts" [99-1]) 24:23 - 25:6. The court acknowledges that later in an affidavit, Jamie Sr. states that "[t]he only purpose of starting from the shop was to obtain a ride to the job site since they did not possess transportation of valid driver's licenses." However, his affidavit contradicts his deposition testimony that before setting out for the jobsite, the employees gathered together the tools they needed based on the assignment they received. Affidavits that contradict prior deposition testimony have no evidentiary value and, therefore, cannot create a disputed question of fact, unless the affidavit itself plausibly explains the discrepancy, which Jamie Sr.'s affidavit does attempt to do. *See Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002).

The Code of Federal Regulations specifically states that time spent receiving instructions and to pick up tools needed to perform the work assigned is compensable:

> Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked. . . . If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finished at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time.

29 C.F.R. § 785.38. As a result, based on the undisputed facts, the time the plaintiffs spent receiving instructions, gathering together the required tools, and traveling to the job site is compensable. The time returning from the jobsite to the shop in Garden Prairie is also compensable because that was the location of their ride home and, therefore, they were required to return there. *See id*.

Although the undisputed facts establish that the work the plaintiffs performed before and after arriving at the jobsite was compensable, the defendants nevertheless contend that summary judgment is inappropriate because the issue of what time is compensable is a question of fact for a jury to determine. The court acknowledges the cases cited by the defendants in which courts found that jurors would need to resolve disputed questions of fact of whether work was preliminary or postliminary under the Portal-to-Portal Act. *See, e.g., Nichols v. City of Chicago*, 789 F. Supp. 1438, 1442 (N.D. Ill. 1992) (whether the care a canine officer provided to his dog while off-duty was preliminary or postliminary to the officer's principal activity was a question of fact). However, in this case the only resolution that would be consistent with both (1) the undisputed fact that the plaintiffs were required to gather their tools before leaving for the jobsite, and (2) the determination set out in the Code of Federal Regulations that time spent picking up and carrying tools prior to being transported to the jobsite as well as the time returning from the jobsite to the employer's premises is compensable, is that the defendants failed to fully compensate the plaintiffs for their time at work. Thus, there is no question of fact left for jurors to determine, and the court can determine as a matter of law the legal significance of those undisputed facts. *See Graham v. City of Chicago*, 828 F. Supp. 576, 583 (N.D. Ill. 1993) (when the "salient facts concerning the Plaintiffs' duties are undisputed . . . [a]ll that remains is a question of the legal significance of the facts.").

Accordingly, the undisputed facts establish that the plaintiffs have worked more than 40 hours in a week, but were not compensated beyond their standard rate of pay for any of the hours in excess of 40. Judgment is thus entered in the plaintiffs' favor on the issue of liability under the Fair Labor Standards Act. Damages shall be determined at a later date.

## II.      ILLINOIS MINIMUM WAGE LAW (COUNT II)

Under the Illinois Minimum Wage Law, an employer must compensate its employees a prescribed minimum hourly rate for the hours worked. *See* 820 Ill. Comp. Stat. 105/4(a)(1). During the years the defendants employed the plaintiffs, the minimum hourly rates were as follows:

| | |
|---|---|
| January 1, 2005 — June 30, 2007 | $6.50 |
| July 1, 2007 — June 30, 2008 | $7.50 |
| July 1, 2008 — June 30, 2009 | $7.75 |
| July 1, 2009 — June 30, 2010 | $8.00 |

*Id.* The plaintiffs (except for J. Mercado, who was paid a higher daily rate) contend that because the undisputed evidence establishes that they worked 11 to 12 hours days but received only $80 each day, the defendants failed to pay the going minimum wage for work performed after July 1, 2007 (which, for an 11 hour day, would have required pay of $82.50).

The defendants have not offered a separate argument in opposition to the plaintiffs' motion for summary judgment on their Illinois Minimum Wage Law claim. Rather, they rely on the same argument offered in opposition to the motion for summary judgment on the Fair Labor Standards Act claim: the plaintiffs worked only 6 hours a day because time in transit is not compensable. Because they worked just 6 hours a day, the defendants contend that the plaintiffs' daily rate of pay of $80 easily satisfied the minimum hourly wage. However, as discussed above, the defendants were required to pay the plaintiffs not just for their time on the jobsite, but were also required under the Portal-to-Portal provision of the Fair Labor Standards Act to compensate the plaintiffs for time spent receiving their assignments, loading their tools, and traveling to and from the jobsite. The Illinois Minimum Wage Law parallels the Fair Labor Standards Act, and regulations interpreting what time is compensable under the Fair Labor Standards Act guides what time is compensable under the Illinois law. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 CV 5755, 2004 WL 1882449, at **3-4 (N.D. Ill. Aug. 18, 2004) (when determining what time is compensable, "the same analysis generally applies to both the FLSA and IMWL"). Thus, under the Illinois Minimum Wage Law, the plaintiffs' time before and after their work at the jobsite is compensable. *Id.* at *3 ("on any day that a Hard Rock employee performed some cleanup in the yard, his time spent performing that activity and the travel time from the last job site to the yard is covered by the statutes").

Accordingly, the undisputed evidence establishes that each of the plaintiffs except for J. Mercado were not paid the minimum wage for all hours worked after July 1, 2007, and judgment is entered in their favor on the issue of liability. As with their claim under the Fair Labor Standards Act, because the plaintiffs have sought judgment only on the issue of liability, the issue of damages must be addressed later.

### III.   ILLINOIS' PREVAILING WAGE ACT  (COUNT III)

Illinios' Prevailing Wage Act requires that all persons "employed by or on behalf of any public body" be paid "[n]ot less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed." 820 Ill. Comp. Stat. 130/3. Each contractor and subcontractor must make and keep for at least 3 years records of each worker's name, the starting and ending times of work each day, the number of hours worked, and the hourly wages paid. *See* 820 Ill. Comp. Stat. 130/5(a)(1).

The plaintiffs contend that the defendants failed to pay them the prevailing wage for the public works projects on which they labored, such as landscaping along area expressways and tollways performed for public bodies such as the Illinois Tollway Authority. In support, they rely on the undisputed evidence that they worked 11-12 hour days and received only the $80 or $130 flat rate paid by the defendants, rather than the $33.15 or $34.00 prevailing hourly wage that Jamie Sr. stated in certified payroll records he had paid.

Although the defendants oppose the motion for summary judgment on the plaintiffs' Prevailing Wage Act claim, the defendants do not offer an argument tailored to that claim. Rather, they again rely on their argument that transit time is not compensable. As best as the court can tell, the defendants' position is that because transit time is not compensable, the number of hours the plaintiffs actually worked at the jobsite on prevailing wage projects was so minimal that the $80 or $130 daily rate they received was in excess of the prevailing wage. However, for the reasons discussed above, the plaintiffs' travel to and from the jobsite was compensable. Thus, the plaintiffs worked 11-12 hour days, and a daily rate of pay of $80 or even $130 is well short of the $33.15 or $34.00 prevailing wage the defendants were required to pay which, for an 11 hour day, would have amounted to $364.65 or $374. For the sake of completeness, the court also notes that even if travel time was not compensable and the plaintiffs actually worked only 6 hours a day, the daily rate of pay of $80 or $130 would still be well short of the $33.15 or $34.00 prevailing hourly wage, which for 6 hours' work would have yielded $198.90 or $204.00 of pay each day.

Accordingly, the undisputed facts establish that the defendants failed to pay the prevailing wage for the days that the plaintiffs worked on prevailing wage projects, and thus the motion for summary judgment on the issue of liability is granted. However, as with the previous two counts, the plaintiffs must still prove damages.

## CONCLUSION

For the reasons given, the court grants the plaintiffs' motion for partial summary judgment as follows: judgment as to liability is granted on Counts I and III in favor of all plaintiffs, while judgment as to liability is granted on Count II in favor of plaintiffs Jose Guzman, Bernardo Mercado, Crisanto Pichardo and Celestino Mercado. The parties shall file a joint status report detailing their position on how the court should proceed on the issue of damages. The status report shall be filed by November 1, 2012. The parties are also strongly urged to engage in settlement discussions.

ENTER:

DATE: October 19, 2012

*Blanche M. Manning*
Blanche M. Manning
United States District Judge